*UNITED STATES BANKRUPTCY COURT*
*Martin Luther King Federal Building*
*50 Walnut Street*
*Newark, New Jersey  07102*
*973-645-4704*

*Novalyn L. Winfield*
*Bankruptcy Judge*

January 15, 2009

Illana Volkov, Esq.
Cole, Schotz, Meisel, Forman & Leonard
25 Main St.
Hackensack, NJ 07601

Samuel Feldman, Esq.
Orloff, Lowenbach, Stifelman & Siegal
101 Eisenhower Pkwy
Roseland, NJ 07068

James Lawlor, Esq.
Wollmuth Maher & Deutsch LLP
One Gateway Center, 9th Flr.
Newark, NJ 07102

                RE:    United Steel Enterprises, Inc.
                      Case No.:    03-50284 (NLW)
                **LETTER OPINION**

Dear Counsel:

      This matter is before the court pursuant to the order of remand issued on September 29, 2006 by the Honorable Joseph A. Greenaway.  The following constitutes the courts findings of fact as required by the order of remand and Bankruptcy Rule 7052.

      United Steel Enterprises, Inc., t/a United Steel Products Co. ("Debtor") filed for relief under Chapter 11 of the Bankruptcy Code on December 15, 2003.  The Debtor remained in possession of its assets and management of its affairs through confirmation of the Debtor's Liquidating Plan of Reorganization on July 8, 2005 ("Confirmation Date").

      As amply reflected by the pleadings on the docket, the Debtor's secured lender was only

grudgingly permitting use of its cash collateral and was pressing for a quick resolution of the bankruptcy. Ultimately, the Debtor agreed that an asset sale was the best means for accomplishing its reorganization. Consequently, the Debtor retained DAK Group, Inc. and DAK Realty Group (collectively "DAK") to prepare the information for solicitation of purchasers and to assist in the review of offers.

As reflected in the January 5, 2009 certification of Martin A. Skulnik ("Skulnik Cert.") a factor complicating an asset sale was that a significant portion of the real property utilized by the Debtor for its operations was owned by non-debtor entities: Howmar Development Co. ("Howmar"), Martin A. Skulnik, LLC ("MAS") and United Metal Warehousing, Inc. ("UMW"). Howmar owned approximately 10.396 acres of the property known as 830 Crowe Road, Stroudsburg, PA, UMW owned approximately 13.243 acres of the property known as 829 Crowe Road, Stroudsburg, PA, and MAS owned approximately 5.073 acres of the property known as 828 Crowe Road, Stroudsburg, PA (the "Contributed Real Estate"). Martin Skulnik owned 100% of the equity interests in Howmar, UMW and MHS (collectively "Martin Skulnik Entities"). Thus, as a practical matter, but for the corporate formalities, Martin Skulnick owned the real property held by Howmar, UMW and MHS.

Through mortgages and other security documents most of the property owned by the Martin Skulnik entities served as security for the Debtor's obligations to PNC Bank. Prepetition, PNC Bank had initiated litigation against the Martin Skulnick Entities, including foreclosure proceedings. This was a factor in the sale process because, as reflected in the Debtor's Disclosure Statement, DAK did not find any party interested in solely purchasing the Debtor's assets. Rather, every potential purchase of the Debtor's assets insisted on acquisition of the real estate owned by the Martin Skulnik Entities. Thus, to facilitate a sale of the Debtor's assets the Debtor, the Unsecured Creditors' Committee, the Martin Skulnik Entities and certain other non-debtor entities entered into a

2

settlement agreement dated June 25, 2004. The other non-Debtor entities consisted of Martin Skulnik individually, United Material Handling, Inc. ("UMH"), and Nancy I. Skulnik ("Nancy")(collectively with Howmar, UMW and MHS the "Non-Debtor Entities"). The settlement agreement provided for the Contributed Real Estate to be part of a sale to Excel Storage Products, Inc.

Thus, in exchange for the Contributed Real Estate being made part of the sale of the Debtor's assets, the Debtor with the consent of the Unsecured Creditors' Committee, agreed to provide a channeling injunction in favor of the Non-Debtor Entities in its plan or reorganziation. This channeling injunction was intended to enjoin the Debtor's creditors (including Howard Skulnik) from pursuing claims relating to (i) the Debtor's business or conduct, (ii) any transactions with the Debtor or (iii) any transactions with Non-Debtor Entities relating to the Debtor.[1]

The breath of this injunction was obviously premised on the benefit creditors would realize from inclusion of the Contributed Real Estate to the Debtor's sale of its assets. Indeed, under the settlement agreement, after payment of PNC's claim, the administrative expense claims and priority claims, the remaining funds would be distributed to the Debtor's general unsecured creditors and the Non-Debtor Entities.[2] Under the plan if the channeling injunction was not approved, this sharing arrangement would be reversed, and the distribution to the Debtor's unsecured creditors would have been minimal at best. In fact, as reflected in the Skulnik certification, Jill Skulnik benefitted from the Contributed Real Estate because she received $12,150 on account of Howard Skulnik's claim

---

[1] At the October 2005 hearing on Jill Skulnik's motion for clarification, counsel for the Debtor made it clear that the Contributed Real Estate would not have been offered unless there was total resolution of all claims, because anything less would leave the Non-Debtor Entities without the Contributed Real Estate and still subject to creditor claims.

[2] Under the sharing arrangement the Debtor's estate was to receive 70% of the remaining funds and the Non-Debtor Entities were to receive 30%.

3

against the Debtor.

This court was and is satisfied that Martin Skulnik contributed his real property to the bankruptcy estate. In his January 2009 certification Skulnik states:

> As the sole equity holder of the Martin Skulnik Entities, I controlled all three entities and was the sole beneficiary of the Contributed Real Estate. I would not have allowed or directed those entities to enter into a Settlement Agreement and commit their assets to the estate without the Channeling Injunction to protect me from the claims of the Debtor's creditors and my creditors whose claims arose from any transaction with the Non-Debtor Entities relating to the Debtor. It was my intention and I believe the intention of all parties to protect me from the claims of such creditors in exchange for the surrender of what were essentially my person al assets.

Thus, as required by the remand from Judge Greenaway the court finds (i) that Martin Skulnik contributed real property to the Debtor's estate and (ii) that this contribution was an essential element of the asset sale that formed the basis for the subsequent liquidating plan of reorganization. Further, as required in *In re Continental Airlines,* 203 F.3d 203, 214 (3d Cir. 2000) the resulting channeling injunction was both fair to creditors (including Jill Skulnik as a successor to Howard Skulnik's claim) and necessary to the reorganization.

Finally, Judge Greenaway's remand required factual findings illuminating the difference between Martin Skulnik's personal obligations to Howard Skulnik and the Debtor's obligations to Howard Skulnik. For this the court relies on Skulnik's January 2009 certification and the Debtor's October 31, 2005 objection to the Jill Skulnik motion for clarification. It appears that Howard Skulnik's claim against Martin Skulnik rests on two promissory notes, each in the amount of $500,000.00 ("Notes"). These notes were given by Martin Skulnik in 2001 in connection with his acquisition of Howard Skulnik's stock interest in the Debtor, Howmar and UMW, pursuant to a Master Agreement effective January 1, 2002. The total purchase price that Martin Skulnik paid for Howard Skulnik's interest in the Debtor, Howmar and UMW was $3,351,000. As reflected in the

Debtor's opposition to the 2005 Motion for Clarification of the Channeling Injunction, it also appears that the Debtor had agreed to make payments to Howard Skulnik at the rate of $25,000 per month for ten years. Further, Martin Skulnik guaranteed the Debtors' obligation to Howard Skulnik.

Following commencement of the Chapter 11 case the Debtor ceased making payments to Howard Skulnik. According to Debtor's counsel, the cessation of payments from the Debtor resulted in Howard Skulnik commencing suit against Martin Skulnik to recover on the Notes. Unquestionably these were personal obligations of Martin Skulnik, but they relate to the ownership of the Debtor. Notably, the terms of the Channeling Injunction contained in the order confirming the Debtor's Liquidating Plan of Reorganization provides in pertinent part that:

> 16. Channeling Injunction. Pursuant to the Plan and this Confirmation Order, Except as Expressly provided in the Plan, at all times on an after the Effective Date, all Creditors of the Debtor shall be enjoined from pursuing any claims against the Non-Debtor entities that are related to or arise from...*(c) any transaction with the non-debtor Entities relating to the Debtor.*

Plainly, the language of the Channeling Injunction was crafted to encompass the litigation on the Notes. Thus, the court finds the Channeling Injunction to have been both necessary and fair as required by *Continental Airlines,* 203 F.3d at 214.

Dated: 1/15/09

                                                /s/ Novalyn L. Winfield
                                                NOVALYN L. WINFIELD
                                                United States Bankruptcy Judge